# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

-----------------------------------------------------------------

CLAY SCOTT and SCOTT MAHONEY, on Behalf of Themselves and All Others Similarly Situated,

                           Plaintiffs,

v.

SHOPVAC CORPORATION and LOWE'S COMPANIES, INC.,

                           Defendants.

-----------------------------------------------------------------

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

## INTRODUCTION

1.     Defendant Shop Vac Corporation ("Shop Vac") manufactures and sells a series of wet/dry vacuums. Defendant Lowe's Companies Inc. ("Lowe's) owns and operates a chain of home improvement stores which sell Shop Vac vacuums, including a series of vacuums produced especially for Lowe's.

2.     The three most important representations and the ones that appear most prominently in advertising and on the box of the Shop Vac vacuums are horsepower, tank capacity, and price. A visit to Shop Vac's website will give consumers the opportunity to look at vacuums through two main searches; one based upon horsepower and the other based upon "tank size."



3.      Shop Vac makes false and misleading representations about two of the three most important representations.

4.      Plaintiffs retained an independent laboratory to conduct tests on Shop Vac wet/dry vacuums.  The results of the tests demonstrated that Shop Vac's representations about horsepower and tank capacity were false and misleading.

5.      Under Plaintiffs' tests, Shop Vac wet/dry vacuums were only able to generate a small fraction of the advertised horsepower.

6.      In addition, under Plaintiffs' tests, the vacuums' tanks were only an average of 64% as large as advertised.

### JURISDICTION

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. 1332(d) because there are more than 100 class members in many different states and the aggregate amount in controversy exceeds $5 million.

8.      Venue is proper in this Court because Shop Vac is a New Jersey corporation with offices in this District and has advertised and sold products in this District.

**THE PARTIES**

9.      Clay Scott is a citizen of the State of Illinois.  Mr. Scott purchased a Shop Vac wet/dry vacuum at a Lowe's store in Illinois and used it for personal, family, or household purposes.  Mr. Scott made his purchase in reliance on the representations on the box concerning the vacuum's horsepower and tank capacity.  Mr. Scott would not have purchased the wet/dry vacuum if he had known the representations concerning horsepower and tank capacity were false.

10.      Scott Mahoney is a citizen of the State of New Jersey.  Mr. Mahoney purchased a Shop Vac wet/dry vacuum at a Lowe's store in New Jersey and used it for personal, family, or household purposes.  Mr. Mahoney made his purchase in reliance on the representations on the box concerning the vacuum's horsepower and tank capacity.  Mr. Mahoney would not have purchased the wet/dry vacuum if he had known the representations concerning horsepower and tank capacity were false.

11.      Defendant Shop Vac Corporation is a New Jersey corporation with its headquarters in Williamsport, Pennsylvania.  Shop Vac manufactures and sells a line of wet/dry vacuums, and is responsible for the advertising, marketing, trade dress, and packaging of the Shop Vac wet/dry vacuums.

12.      Defendant Lowe's Companies, Inc. is a North Carolina corporation with its headquarters in Mooresville, North Carolina.  Lowe's owns and operates a chain of over 1700 "Lowe's" home improvement retail stores throughout the United States.  Among its many products, Lowe's sells both Shop Vac Wet/Dry vacuums with traditional Shop Vac trade dress and a series of Shop Vac Wet/Dry vacuums that Shop Vac produces specifically for Lowe's with different trade dress.

# FACTS

**Horsepower**

13.     Horsepower is a measure of work performed by a motor. If the motor is not actually performing work, then any measurement of "horsepower" at that time is fictitious.

14.     Horsepower is defined as Voltage times Amperage times Motor Efficiency divided by 746.

$$\frac{\underline{VAM_{eff}}}{746} = HP$$

15.     As a matter of basic physics, you cannot get more energy out of a system or machine than the amount of energy you put in.

16.     Most consumer electronics and most circuit breakers are in the 15 Amp range with some going as high as 20 Amps. This means that with the standard electrical format of a home, the maximum horsepower that could be attained with 100% efficiency by any motor would be between 2.41HP and 3.21HP. Of course, that assumes a perfect world with 100% efficient machines and with no losses due to heat or other factors.

17.     For example, if a consumer was to attempt to use a true 4 HP motor in their home, it would blow the circuit breaker long before 4 HP was reached. True 3 HP and higher motors generally run on 240 Volt lines, not 120 Volt lines.

18.     According to Plaintiffs' tests, a conservative measurement of the rough efficiency of a wet/dry vacuum was 47%. Thus, in reality, a wet/dry vacuum, no matter what it says on the packaging, would not be able to exceed 1.13 HP to 1.5087 HP, depending on the Amperage rating of the home circuitry.

4

**The Term "Peak Horsepower" Is Misleading To Reasonable Consumers**

19.      Shop Vac places the word "peak" before "horsepower" to justify the false and misleading horsepower numbers.

20.      To arrive at what it calls "peak" horsepower, Shop Vac measures the initial voltage spike that occurs for a tiny fraction of a second when the vacuum is first turned on.  By using the Volts from that initial spike in the horsepower equation, which Plaintiffs' tests show lasts about 17 thousandths of a second, or 0.0017 seconds, Shop Vac reaches the stated "peak" horsepower.

21.      Importantly, during this spike, the motor has not begun to spin and no useful suction is produced.  As such, since there is no work occurring, Shop Vac's "peak horsepower" number isn't even a real measure of "horsepower."

22.      A reasonable consumer would not understand that the vacuum's "peak horsepower" has nothing to do with the actual power of the vacuum, let alone that it only corresponds to a measure of an initial voltage spike before the vacuum has even begun to operate as designed.

**Plaintiffs' Independent Tests**

23.      Prior to filing, in January 2012, Plaintiffs commissioned tests on  six Shop Vac wet/dry vacuums: a 2.0 HP, 1.5 gallon unit (model 201-25-27); a 2.5 HP, 2.5 gallon unit (model 589-52-00); a 3.0 HP, 8.0 gallon unit (model 586-08-27); a 3.5 HP, 8.0 gallon unit (model 586-73-00); a 5.5 HP, 16 gallon unit (model 586-46-27); and a 6.5 HP, 10 gallon unit (model 962-55-10).  Upon information and belief, similar results would be reached for all Shop Vac models.

24.      Measurements were taken for line current, power factor, barometric pressure, air duct temperature, total pressure, static pressure, free velocity and air flow.   From these

measurements, incoming horse power, air flow and air horse power were calculated. Testing was done at the typical household voltage of 120 Volts rms.

25.     The test results and attendant calculations showed that the Shop Vac vacuums, in actual use, produced a range of 17% to 40% of the advertised horsepower under full load and 26% to 51% when under no load. (See chart at ¶ 27) However, even this measurement is taken at the motor, and is not a true indication of the actual work that the vacuum performs.

26.     To observe a true measure of actual work, Plaintiffs' laboratory measured and calculated "air horsepower," or the actual suction power of the vacuum. Air horsepower is a more accurate measurement of the vacuum's ability to do work as it corresponds to the power seen at the intake of the vacuum. In essence, air horsepower corresponds directly with the vacuum's ability to do the work that a consumer expects.

27.     The test results and attendant calculations showed that the Shop Vac vacuums, in actual use, produced a range of a negligible percentage to 2.7% of the advertised horsepower with no load and 1% to 10.3% at 90% load.

| Stated Peak HP | HP At Motor | | Air HP | |
|---|---|---|---|---|
| | Full Load | No load | No Load | 90% Load |
| 2.0 | 0.8 | .89 | 0 | 0.02 |
| 2.5 | 0.95 | 1.26 | 0.01 | 0.2 |
| 3.0 | 0.9 | 1.37 | 0.08 | 0.31 |
| 3.5 | 1.17 | 1.41 | 0.07 | 0.36 |
| 5.5 | 0.91 | 1.44 | 0.12 | 0.46 |
| 6.5 | 1.24 | 1.66 | 0.05 | 0.14 |

### Shop Vac's Horsepower Claims Violate Industry Standards

28.     In the electronics industry, there are various standards that govern ratings and testing protocols for electrical devices.  These standards include, but are not limited to, those set by: Underwriters Labs (UL); Canadian Standards Association (CSA); International Electrotechnical Commission (IEC); and the National Electrical Code (NEC).

29.     The horsepower claims advanced by Shop Vac violate many of these standards including but not limited to UL-1017; CSA-243 and IEC 60335-1 and 60-335-2.

30.     For example, UL-1017 sets standards for calculating the mean wattage (horsepower) of a device and requires that calculations be performed after the vacuum is warmed up and in normal operating conditions.  Shop Vac did not do this.  To achieve its false and misleading horsepower numbers, Shop Vac performed its calculations during the initial infinitesimally-short voltage spike, not under normal operating conditions as established by UL-1017.

31.     The NEC is a safety standard that has become an industry standard.  Since its first publication in 1897 the NEC has been completely adopted by 41 states (including California) and the District of Columbia.  Even in the states where there has not been a full scale adoption of the NEC standard, it is adopted at least partially; that is to say there is not a single state that does not at least to some extent recognize the NEC safety standard.

32.     Under the NEC standard, a typical home 15 Amp rated circuit could sustain no more than a 12 Amp continuous circuit capacity.  Simply put, the standard means that the most horsepower that any electrical device could sustain safely in a home is 1.93 HP at the motor.  With the efficiency observed in the tests by Plaintiff that would mean that a safe wet dry vacuum (with 47% efficiency) could only see .91 HP as usable maximum horsepower.

33. Thus, Shop Vac's horsepower claims violate NEC safety standards.

**Shop Vac's Claims About Tank Capacity Are False And Misleading To Reasonable Consumers**

34. Shop Vac's representations about the capacity of the tanks are misleading because in actual operation the vacuums stop working, due to an automatic shut off feature, when the tanks reach between 47% and 83% of capacity (an average of 64%).

| Stated Capacity (gallons) | Capacity at Shut Down | Actual Capacity as Percent Of Stated Capacity |
|---|---|---|
| 1.5 | 0.7 | 47% |
| 2.5 | 1.7 | 68% |
| 8 (3 HP unit) | 5.4 | 68% |
| 8 (3.5 HP unit) | 5.0 | 63% |
| 10 | 8.3 | 83% |
| 16 | 8.9 | 56% |

35. Even when the actual capacity of the tanks is measured when the vacuums are not in use and the automatic shut off mechanism is overridden, only one of the test vacuums was able to attain its advertised capacity. When the motor assemblies are removed entirely from the tanks, the actual capacity is actually sometimes slightly higher than the stated capacity, but this does not reflect a usable capacity and would be akin to measuring the headroom in a convertible with the top down.

36. A reasonable consumer would not understand that Shop Vac's claims of tank capacity have nothing to do with how much the tanks could hold while operating the vacuums before the consumer has to empty the tanks.

8

37.     A reasonable consumer would not understand that the claimed volume capacities assume that the consumer is not using the products as vacuums, but as mere storage devices.

**Shop Vac Manufactures A Vacuum Especially For Lowe's**

38.     In additional to selling regular Shop Vac vacuums, Lowe's also sells a line of Shop Vac wet/dry vacuums that is only sold by Lowe's.

39.     These vacuums, like the one purchased by Mr. Clay and Mr. Mahoney, are packaged differently than regular Shop Vac vacuums, which generally feature a yellow trade dress:



40.     The "Lowe's" Shop Vac vacuums feature a blue trade dress:



41.     Lowe's also advertises its Shop Vac line in its stores, periodicals and online. Below is the image associated with Black Friday advertisements run by Lowe's both online and in print for sales in 2010:



42.     The "Lowe's" Shop Vac vacuums have the same misrepresentations on the box about horsepower and tank capacity as regular Shop Vac vacuums.  Just like Shop Vac, Lowe's emphasizes horsepower and tank capacity, including on its hang tags in the store as seen in ¶ 2 above, in its advertising.

43.     Lowe's has also actively made the same misrepresentations about horsepower and tank capacity in its advertisements and buyer's guides for its "Lowe's Shop Vacs."

44.     In addition, Lowe's has made independent misrepresentations about the vacuums. Until recently, Lowe's had a Vacuum Cleaner Buyer's Guide available on its website.  The guide described the wet/dry vacuums based upon horsepower and capacity.  Lowe's had this to say about vacuum selection, "When choosing a vacuum don't use the amount of amperage as a deciding factor.  Amperage is the amount of electricity the motor uses not the suction *power*." (Historic       screen       capture       from       www.lowes.com/cd_Vacuum+Cleaner +Buying+Guide_444956289_ emphasis added).

45.     While Lowe's Vacuum Cleaner Buyer's Guide mentions horsepower and tank capacity at least five times each, the only discussion regarding amperage is that it is a poor indicator of a vacuum's performance.

46.     However, Plaintiff's independent tests actually showed a strong correlation between vacuum power and amperage.  In fact, this correlation is also recognized by the National Electric Code and the Underwriter Laboratory Standards for Safety.  The National Electric Code requires amperage to be listed on motors' nameplates.  According to the National Electric Code, a motor will draw its rated amperage when producing its rated output power (wattage or horsepower) when supplied with its standard voltage.  That is to say, if you know the operating amperage and the efficiency of a machine you can calculate the horsepower.  For

11

example, the NEC standard states that a true 1-Horsepower motor will draw a continuous 16 amps to generate that one horsepower on a 115 volt home circuit. *See* Table 430-148 & 430-150 of the NEC and Table 50.1 of UL standard 508A.

47.     This calculation does not work with Shop Vac vacuums because the horsepower number is meaningless. By rejecting amperage in the Lowe's Vacuum Buyer's Guide, the Defendants would rather a consumer buy a vacuum under their fictitious "peak horsepower" standard than that established by the current safety standards.

48.     In rejecting amperage, the Defendants impliedly direct consumers to their horsepower standard, which doesn't measure "suction power" at all.

## CLASS ACTION ALLEGATIONS

49.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs brings this suit as representatives of a class of all individuals in the United States who, within the relevant statute of limitations period, purchased any Shop Vac Wet/Dry vacuum (the "Class").

50.     Plaintiff Scott further seeks to represent a subclass defined as all Class members who are Illinois residents or who purchased a Shop Vac Wet/Dry vacuum in Illinois (the "Illinois Subclass").

51.     Plaintiffs also seeks to represent a subclass of all consumers who purchased their Shop Vac at a Lowe's home improvement store (the "Lowe's Subclass"). The Lowe's Subclass, together with the Class and the Illinois Subclass, are hereinafter referred to as the "Classes."

52.     Specifically excluded from the Classes are all Federal judges and members of their families within the first degree of consanguinity, and the officers, directors and counsel of record of Defendants, and all employees of Defendants. Also excluded from the Classes are persons or entities that purchased such Shop Vac Wet/Dry vacuums for resale.

53.     Plaintiff reserves the right to amend or modify the definitions of the Classes with greater specificity, further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

54.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  While the exact number of the Classes' members is presently unknown, and can only be ascertained through appropriate discovery, Plaintiff believes the members of the Classes number in the tens of thousands.

55.     Common questions of law and fact exist as to members of the Classes and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

a.     whether Defendants misrepresented the peak horsepower and/or tank capacity of the Shop Vac Wet/Dry vacuums;

b.     whether Defendants knew their claims regarding the Shop Vac Wet/Dry vacuums were false and/or misleading;

c.     whether  Defendants  breached  express  warranties  by  making  the misrepresentations;

d.     whether  Defendants  have  been  unjustly  enriched  as  a  result  of  their misrepresentations;

e.     whether Defendants' misrepresentations violate the Magnuson-Moss Act, 15 U.S.C. § 291, et seq.;

f.     whether Defendants' misrepresentations violate New Jersey law;

g.     with respect to the Illinois Subclass, whether Defendants' misrepresentations violate Illinois law;

13

h.    whether Defendants' actions as described above violate the consumer fraud laws of individual states; and

i.    whether Class members are entitled to damages, restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

56.    Plaintiffs' claims are typical of the claims of Classes because Plaintiffs purchased Lowe's Shop Vac Wet/Dry vacuums at Lowe's stores and suffered a loss of money as a result of that purchase. The claims have the same essential characteristics as the claims of the members of the Classes and are based on the course of conduct and identical legal theories. The members of the Classes have suffered the same type of injury and possess the same interests as Plaintiffs. A single resolution of these claims would be preferable to a multiplicity of similar actions.

57.    Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Classes, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Classes will be fairly and adequately protected by Plaintiffs and their counsel.

58.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Classes. Individual members of the Classes may lack the resources to undergo the burden and expense of individual prosecutions of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Class

treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

59.     This suit is maintainable as a class action under Fed. R. Civ. P. 23 (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes in their entirety.

60.     This suit is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because the questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I

### For Violation of Magnuson-Moss Warranty Act Brought By The Class

### Against Shop Vac And Additionally By The Lowe's Subclass Against Lowe's

61.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

62.     Shop Vac Wet/Dry vacuums are consumer products as defined in 15 U.S.C. § 2301(1).

63.     Plaintiffs and members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

64.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

65.     In connection with the sale of Shop Vac Wet/Dry vacuums, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that Shop Vac Wet/Dry vacuums had certain "peak horsepowers" and had a certain capacity in gallons. These statements are untrue, as detailed above. The term "peak horsepower" is false and/or misleading because

even under ideal conditions, the motor in the vacuum cannot operate anywhere near the stated peak horsepower. Moreover, the description of the vacuum's capacity is false and/or misleading because during the operation of the unit the tank's capacity is significantly less than represented.

66. By reason of Defendants' breach of the express written warranties stating that the Shop Vac Wet/Dry vacuums had certain "peak horsepower" and had a capacity of a certain number of gallons, Defendants violated the statutory rights of Plaintiffs and members of the Classes pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., thereby damaging Plaintiffs and the members of the Class.

## COUNT II

### For Violation of the New Jersey Consumer Fraud Act, NJSA § 56:8-1 et seq., Brought By

### The Class Against Shop Vac And Additionally By The Lowe's Subclass Against Lowe's

67. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

68. Plaintiffs allege that New Jersey law should be applied to the claims of the members of the Class throughout the country.

69. This cause of action is brought pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq. (the "Act").

70. Plaintiffs are consumers within the meaning of the Act. The Shop Vac vacuums are "merchandise" within the meaning of the Act. At all relevant times, Defendants were and have been "persons" within the meaning of the Act. Defendants are engaged in the sale and advertisement of merchandise within the meaning of the Act. Shop Vac is incorporated and conducts a significant amount of trade and commerce in New Jersey.

16

71.    N.J.S.A. § 56:8-2 declares unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…."

72.    Defendants consciously and intentionally misrepresented the horsepower and tank capacity of the vacuums. Defendants fraudulent and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably in the circumstances, and violate N.J.S.A. § 56:8-2 because they constitute an unconscionable commercial practice, deception, fraud, false promise and/or misrepresentation as to the nature of the goods.

73.    The misrepresentations described herein were made with the intent by Defendants that Plaintiffs and the Class rely on such deceptions and thereby purchase the vacuums.

74.    Plaintiffs and the Class have suffered an ascertainable loss caused by Defendants' misrepresentations because: (a) they would not have purchased the vacuums on the same terms if the true facts concerning its purported health benefits had been known; and (b) they paid a price premium due to the misrepresentations in Defendants' advertising, marketing, and labeling.

75.    The damages suffered by Plaintiffs and the Class were directly and proximately caused by the misrepresentations of Defendants, as described more fully herein.

76.    Pursuant to N.J.S.A. § 56:8-19, Plaintiffs and the Class seek a declaratory judgment and court order enjoining the above-described fraudulent acts and practices of Defendants and for restitution and disgorgement, treble damages, attorneys' fees and costs.

## COUNT III

### Violation of the Illinois Consumer Fraud Act on Behalf

### Of the Illinois Subclass Against Defendants

77.     Plaintiff Scott adopts and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

78.     Should the Court determine that New Jersey law does not apply to the claims of all Class members, Plaintiff alleges that Illinois law should apply to the claims of the Illinois Subclass.

79.     Defendants were at all relevant times engaged in trade or commerce as defined by the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, et seq. (the "Consumer Fraud Act").

80.     Upon information and belief, Defendants at all relevant times knew the misrepresentations about horsepower and tank capacity were untrue.

81.     The conduct set forth above constitutes unfair and deceptive conduct in violation of the Consumer Fraud Act.

82.     The unlawful and unfair business practices set forth above have and continue to injure the Subclass and cause damage in fact and the loss of money.

### COUNT IV

### For Breach of Express Warranty By The Class Against Shop Vac

### And Additionally By The Lowe's Subclass Against Lowe's

83.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

84.     Defendants expressly warranted in their marketing, advertising and promotion of the Shop Vac Wet/Dry vacuums that the Shop Vac Wet/Dry vacuums had certain "peak

horsepowers" and had a capacity of a certain number of gallons.  These statements are untrue as detailed above.

85.     Plaintiffs and members of the Class purchased the Shop Vac Wet/Dry vacuums based upon the above express warranties.

86.     Defendants breached their express warranties by selling the Shop Vac Wet/Dry vacuums with a motor that, even under ideal conditions, cannot operate anywhere near the stated peak horsepower and with a tank that has a capacity which is significantly less than represented.

87.     Plaintiffs and the members of the Classes were injured as a direct and proximate result of Defendants' breach because:  (a) they would not have purchased the Shop Vac Wet/Dry vacuums on the same terms if the true facts concerning the Shop Vac Wet/Dry vacuums' horsepower and tank capacity were known; (b) they paid a price premium for the Shop Vac Wet/Dry vacuums; and (c) the Shop Vac Wet/Dry vacuums did not have the quality or value as promised.

## COUNT V

### For Unjust Enrichment By The Class Against Shop Vac

### And Additionally By The Lowe's Subclass Against Lowe's

88.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

89.     Plaintiffs and the members of the Classes conferred a benefit on Defendants by purchasing the Shop Vac Wet/Dry vacuums.

90.     Defendants received a benefit at Plaintiffs and Class members' expense in the form of revenues derived from the sale of the Shop Vac Wet/Dry vacuums.

91.     Defendants have been unjustly enriched by retaining the revenues derived from purchases of the Shop Vac Wet/Dry vacuums, which retention under these circumstances is

unjust and inequitable because Defendants misrepresented the horsepower of the Shop Vac Wet/Dry vacuums and the capacity of the Shop Vac Wet/Dry vacuums' tanks, and caused Plaintiff and the members of the Class members to lose money.

92.     Plaintiffs and the members of the Class suffered a loss of money as a result of Defendants' unjust enrichment because: (a) they would not have purchased the Shop Vac Wet/Dry vacuums on the same terms if the true facts concerning their horsepower and tank capacity had been known; (b) they paid an unfair price premium due to the mislabeling of the Shop Vac Wet/Dry vacuums as having a greater horsepower and tank capacity than they actually do; and (c) the Shop Vac Wet/Dry vacuums did not perform as promised.

93.     Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

### COUNT VI

### For Injunctive and Declaratory Relief By The Class Against Shop Vac
### And Additionally By The Lowe's Subclass Against Lowe's

94.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

95.     Through the improper practices described above, Defendants have intentionally misrepresented the horsepower and tank capacity of the Shop Vac wet/dry vacuums sold to Plaintiffs and the members of the Classes.

96.     Defendants' practices described herein are unlawful and against public policy, and therefore, Defendants should be prohibited and enjoined from engaging in these practices in the future and should be compelled to correct the harm caused by their conduct.

97.    Defendants should be: (i) ordered to recall all Shop Vac wet/dry vacuums with the false and misleading representations about the horsepower and tank capacity; (ii) enjoined from continuing to market and advertise the wet/dry vacuums with the false and misleading representations as described above; (iii) ordered to issue corrective disclosures to all members of the Classes.

## COUNT VII

### For Violation of the Consumer Fraud Laws of the Several States Except for Illinois and New Jersey By The Class Against Shop Vac And Additionally By the Lowe's Subclass Against Lowe's

98.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

99.    Should the Court determine that New Jersey law does not apply to the claims of all Class members, Plaintiff alleges violations of the individual consumer protection laws of the states.

100.    By mislabeling and selling the Shop Vac Wet/Dry vacuums as having qualities, benefits and characteristics which they do not have, Defendants have engaged in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer protection statutes listed below.

101.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALA. CODE § 8.19-1, *et seq*.

102.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STAT. CODE § 45.50.471, *et seq*.

103.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT. § 44-1522, *et seq*.

21

104.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE ANN. § 4-88-107, *et seq*.

105.    Defendants have engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of CAL.BUS. & PROF CODE § 17200, *et. seq.*, § 17500, *et seq.*, and CAL.CIV.CODE § 1750, *et. seq.* Plaintiff Scott has sent appropriate notice to Defendants under CAL.CIV.CODE § 1780(a), and seeks only injunctive relief under § 1750, *et. seq.* at this time.

106.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of COLO. REV. STAT. § 6-1-101, et seq.

107.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, *et seq*.

108.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, *et seq*.

109.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 28-3901, *et seq*.

110.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. ANN. § 501.201, *et seq*.

111.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, *et seq*.

112.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480, *et seq*.

113.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, *et seq.*

114.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN. § 24-5-0.5-1, *et seq.*

115.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IOWA CODE § 714.16, *et seq.*

116.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KAN. STAT. § 50-623, *et seq.*

117.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN. § 367.110, *et seq.*

118.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of LA. REV. STAT. § 51:1404, *et seq.*

119.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ME. REV. STAT. tit. 5, § 205-A, *et seq.*

120.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CODE. ANN., COM. LAW § 13-101, *et seq.*

121.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation MASS. GEN LAWS ch. 93A, §1, *et seq.*

122.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS § 445.901, *et seq.*

123.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. § 8.31, *et seq.*

124.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MISS. CODE ANN. § 75-24-3, *et seq.*

*125.*    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MONT. CODE ANN. § 30-14-101, *et seq.*

126.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59-1601, *et seq.*

127.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. § 598.0903, *et seq.*

128.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN. § 358-A:1, *et seq.*

129.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57-12-1, *et seq.*

130.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349, *et seq.*

131.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. § 75-1.1, *et seq.*

132.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, *et seq.*

133.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of OKLA. STAT. tit. 15, § 751, *et seq.*

134.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, *et seq.*

135. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. CONS. STAT. § 201-1, *et seq.*

136. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS § 6-13.1-1, *et seq.*

137. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE § 39-5-10, *et seq.*

138. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24-1, *et seq.*

139. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TENN. CODE ANN. § 47-18-101, *et seq.*

140. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.*

141. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE. ANN. § 13-11-1, *et seq.*

142. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VT. STAT. ANN. tit. 9, § 2451, *et seq.*

143. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VA. CODE ANN. § 59.1-196, *et seq.*

144. Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, *et seq.*

145. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. VA. CODE § 46A-6-101, *et seq.*

146.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT. § 100.18, *et seq.*

147.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN. § 40-12-101, *et seq.*

148.     The acts, practices, misrepresentations and omissions by Defendants described above and Defendants' dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above statutes, because each of these statutes generally prohibits deceptive conduct in consumer transactions.  Defendant violated each of these statutes by representing that the Shop Vac wet/dry vacuums had horsepower and tank capacity that they do not have.

149.     Plaintiffs and Class members suffered a loss of money as a result of Defendants' misrepresentations because: (a) they would not have purchased the Shop Vac Wet/Dry vacuums on the same terms if the true facts concerning their horsepower and tank capacity had been known; (b) they paid an unfair price premium due to the misrepresentations concerning horsepower and tank capacity; and (c) the vacuums did not perform as promised.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.     For an order certifying the national Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the Class members;

B. For an order certifying the Illinois Subclass and the Lowe's Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Scott as the representative of both Subclasses and his attorneys as counsel to the Subclasses;

C. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

D. For an order declaring that Defendants' conduct violates the statutes referenced herein;

E. For an order awarding compensatory and punitive damages in amounts to be determined by the Court and/or jury;

F. For prejudgment interest on all amounts awarded;

G. For an order of restitution and all other forms of equitable monetary relief;

H. For injunctive relief as pleaded or as the Court may deem proper; and

I. For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Dated: April 27, 2012

Respectfully submitted,

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By:\_\_\_Lisa J. Rodriguez_____
By:\_\_\_Nicole M. Acchione_____
Lisa J. Rodriguez
Nicole M. Acchione
258 Kings Highway East
Haddonfield, NJ 08033
Telephone: 856-795-9002
Facsimile: 856-795-9877
lisa@trrlaw.com
nacchione@trrlaw.com

**FARUQI & FARUQI, LLP**
Adam R. Gonnelli
AG-4782
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: agonnelli@faruqilaw.com
*Pending admission pro hac vice*

**WEINSTEIN LAW**
Jeffrey L. Weinstein
**TX. Bar No. 21096450**
Bonner C. Walsh
**TX. Bar No. 24051766**
518 East Tyler Street
Athens, Texas 75751
Phone: (903) 677-5333 ext. 210
Facsimile (903) 677-3657
*Pending admission pro hac vice*

***Counsel for Plaintiffs***